DEPARTMENT OF VETERANS AFFAIRS
Medical Center
830 Chalkstone Avenue
Providence RI 02908-4799

In Reply Refer To: 650/11B

March 10, 2006

Barbara Sherman, MSW
Primary Care Service (11B)
VA Medical Center
Providence, RI 02908

SUBJ: Proposed Suspension

1. This is to notify you that it is proposed to suspend you for a period not to exceed three (3) calendar days based on the following:

**CHARGE ONE – FAILING TO APPROPRIATELY ADDRESS A PATIENT CARE ISSUE**

On Friday, January 20, 2006, at approximately 9:30 am, you were informed by Margaret Dyer, RN, Firm VI Manager, that a patient may need Respite Care. After receiving Ms. Dyer's guidance, you then approached Maria Trice, RN to discuss the situation. Ms. Dyer intervened and instructed you to contact Ann Spence, MSW, Geriatric Service Line Manager for additional assistance. You consulted with Ms. Spence who provided the same guidance communicated to you by Ms. Dyer. After speaking with Ms. Spence, you then approached Maria Trice, RN and informed her that you had a 10:00 appointment. You did not take the necessary action to resolve the patient care issue. As a result, Ms. Trice took action to ensure the patient care issue was addressed.

**CHARGE TWO – FAILING TO TAKE APPROPRIATE FOLLOW-UP ACTION**

On February 16, 2006, you met with Patient C.Z. #7070 for a screening appointment and indicated in the medical record for Patient C.Z. #7070 that you would place a consult to Mental Health and Behavioral Science Service for further diagnostic assessment but you did not submit the consult. In addition, a review of the screening documentation indicated a consult was not necessary.

**CHARGE THREE - FAILING TO SCHEDULE A FOLLOW-UP APPOINTMENT FOR A PATIENT**

On February 17, 2006, you met with Patient M.B. #4741 and conducted Geriatric Evaluation/Assessment but failed to schedule a follow-up appointment for Patient M.B. #4741.

2. You have the right to reply to this notice personally or in writing, or both personally and in writing, and to submit affidavits in support of your reply showing why the notice is inaccurate and any other reasons why your proposed suspension should not be effected. The evidence on which this notice of proposed suspension is based on will be available for your review in the Human Resources Management office, Building 5. You will be allowed adequate official duty time for reviewing the evidence relied on to support the reasons in this letter for preparing a written reply, securing affidavits, and for making a personal reply. Arrangements for the use of official time or requests for additional time should be made with me. You have the right to be represented by an attorney or other representative.

3. You will have until the close of business March 20, 2006, to reply to this letter personally or in writing, or both personally and in writing. Your written reply must be submitted to me. I will receive your personal reply or will designate an official to receive it. If you do not understand the above reasons why your suspension is proposed, contact me or Tammy Holt, Human Resources Specialist, at extension 3507 for further explanations.

4. On one previous occasion, you failed to follow the instructions of a supervisor and you were reprimanded by letter dated November 30, 200. This past record will be taken into account in determining proper disciplinary action, if one or more of the above reasons is sustained. You may reply orally or in writing, or both orally and in writing, with respect to these previous infractions and penalties and you may submit supporting evidence, including affidavits. In this regard, you may make a statement expressing your views as to the consideration to be given such past record in determining proper action.

5. The final decision to effect the action proposed has not been made. I will make the final decision and will give full and impartial consideration to your reply, if a reply is submitted.

6. You will be given a written decision as soon as possible after your reply has had full consideration or after the close of business on March 20, 2006, 2006, if you do not reply.

7. You will be retained in an active status during the period of this advanced notice.

DAWNA BLAKE, MD
Chief, Primary Care Service (acting)

Barbara F. Sherman, MSW, LCSW
P.O. Box 454
Albion, Rhode Island 02802

April 7, 2006

**Via Facsimile and**
**Regular Mail**

Dawna Blake, M.D.
Chief of Primary Care (Acting)
Department of Veteran Affairs
Medical Center
830 Chalkstone Avenue
Providence, RI 02908-4799

Re: Barbara Sherman, LCSW, Proposed Suspension

Dear Dr. Blake:

Thank you for giving me the opportunity to respond to the three charges outlined in your letter of March 10, 2006. Before I address the merits of the charges, I want to express that I am writing this response to further demonstrate my dedication to, and love of, my work as a licensed clinical social worker at the Medical Center. I like my believe that I have made, and will continue to make, a positive contribution to the primary care provided to Veterans as part of a high quality and comprehensive integrated health care system. I have asked my attorney, David Maglio, to help me with this response and to attend Monday's meeting with me.

For the foregoing reasons, I respectfully request that the three charges against me be dismissed and that I not receive any adverse disciplinary action on the three charges.

**CHARGE 1**
**Failing to Appropriately Address a Patient Care Issue**

In this case, as evidenced by my note of January 20, 2006, attached, I answered an unexpected telephone call from Mr. Azevedo's wife and primary caregiver who advised me that she was being treated for a heart attack and was concerned about her husband, a VA patient, receiving adequate care while she was hospitalized.

It was not, and is not, my role to determine whether additional respite care is needed and, if so, how much should be provided to a patient. Therefore, I referred the issue to Ms. Trice and continued to see my patients whom I had scheduled for the day. I referred the patient's issue to Ms. Trice, because it is my understanding that she, as a continuing care registered nurse, is primarily responsible for arranging for the care of our patients once they leave the hospital and was the best person to do so in this case.

According to Ms. Dyer's January 20, 2006 report of contact, I did tell Ms. Trice that I had to see a scheduled patient at 10:00 a.m. However, if Ms. Trice had asked me to deal with the issue in between scheduled appointments, I would have done so and asked her any questions that I needed answered to complete the task. Instead, Ms. Trice decided to follow up (in her usual excellent fashion) on Mrs. Azevedo's concerns.

Ann Spence's January 20, 2006 report of contact, which was **requested** by Ms. Dyer, indicates that I acted appropriately in coming to Ms. Spence's office seeking guidance on how to deal with Mr. Azevedo's issues. I acted timely and appropriately in relaying the information to Ms. Spence. However, I disagree that I was told to handle the issue and that, instead, I "handed it off to another staff member." It is disconcerting to me that Ms. Dyer asked Ms. Spence to document a situation of which she did not have all of the facts. It is apparent from Ms. Dyer's statement that this referral was not "handed off to another staff member." Rather, it was Ms. Trice's decision to follow-up in the morning so that she did not have to "deal" with the situation later in the day on a Friday.

From a learning point of view, I am disturbed and discouraged that my supervisors did not take the time to talk with me in a **timely** fashion and explain to me that arranging for additional continuing care for Mr. Azevedo is part of my job duties. If this is so, I have no problem performing this, or any other task, asked of me. Instead, Ms. Dyer brought this issue up with me seven days after she had already "documented the incident" and while we were talking about the mentor program that I was eager to start. If I made a mistake, then I want, and deserve, to be told as quickly as possible so that I can learn from it and not make the same mistake the next time.

So that I have a clear understanding of my job duties, I would appreciate receiving a copy of the 'social worker clinical standards, Medical Center Policy, and JCAHO guidelines" referenced in Ms. Dyer's February 3, 2006 memorandum to me, a copy of which I attach to this letter.

**CHARGE 2**
**Failure to Take Appropriate Follow-Up Action**

I readily admit that I did not schedule a follow-up appointment for Mr. Zawacki. However, it was determined that one was not necessary. I do not understand why a

professional colleague of mine did not simply tell me of the situation and turn it into a learning experience rather than it becoming a disciplinary issue. Although I do not want to minimize the importance of scheduling follow-up appointments, this type of an error only becomes serious when the patient is harmed by the failure. Thankfully, Mr. Zawacki was not harmed by my error.

**CHARGE 3**
**Failing to Schedule a Follow-Up Appointment for a Patient**

I admit that I failed to schedule a follow-up appointment for Mr. Benoit. This is a mistake that could have easily been rectified by Dr. O'Connell if he simply told me of my error, since he caught it within two hours of receiving my note. (Please refer to my February 17, 2006 note and Dr. O'Connell's February 17, 2006 attached to this letter.) Instead, Dr. O'Connell apparently scheduled the follow-up MMSE and, based on my note, felt it appropriate to increase Mr. Benoit's dose of Aricept.

Instead of discussing my error with me, either personally or by electronic mail, Dr. O'Connell, within minutes of writing his note, sent an electronic mail message to Ms. Dyer criticizing my documentation. Frankly, my reading of the note seems to indicate that Dr. O'Connell was asked to report any issues that he may have with my work.

With regard to Charge 2, as well as Charge 3, it is important to remember that during this time I was being mentored by Erin Clare-Sears due to documentation concerns. I learned a great deal from Erin who worked patiently and for many hours with me. Erin's, and my, hard work apparently paid off as she noted in her March 2, 2006 report that she had provided me with the tools to improve documentation and during our last meeting I showed that I could meet the goals set for me. I am enclosing a copy of Ms. Sears' March 2, 2006 report so that you can see that I worked hard, had a positive attitude, and, by week 4, demonstrated "marked improvement". Since completing the mentor program, I believe that I have provided the proper documentation in all of my patient's charts.

The month long mentoring period was a time of change for me as I was learning how to document a patient's chart with a brand new template. As noted in item 5 of the Index provided to me, Erin Sears reviewed the note upon which Charge 2 is based. Charges 2 and 3 are based on documentation infractions that occurred on the first and second days that I was using three new templates created by Ms. Sears. I find it difficult to understand why I was charged for documentation infractions during my mentoring period.

In summary, I want to convey that I know that I am not perfect and that I will continue to make mistakes as I strive to provide the best care possible to my patients. It is one of my goals not to make the same mistake twice. It is my hope that, in the interest of providing the best primary care possible, my supervisors, as well as my colleagues, will continue to take the time to point out my errors, or areas where I can improve, in a supportive, constructive manner because it is my belief that the only real mistake is the one from which we learn nothing. I learn nothing, and I feel demoralized and not part of the primary care team when, as with these three charges, I am "written up" and never spoken to about how to correct my mistakes.

Thank you for your time in reading this response and I look forward to meeting with you on Monday.

Very truly yours,

Barbara Sherman

Barbara Sherman

Enclosures

DEPARTMENT OF VETERANS AFFAIRS
Medical Center
830 Chalkstone Avenue
Providence RI 02908-4799

In Reply Refer To: 650/11B

April 17, 2006

Barbara Sherman, MSW
Primary Care Service (11B)
VA Medical Center
Providence, RI 02908

SUBJ: Suspension

1. In connection with the letter dated March 10, 2006 in which you were given advance notice of your proposed suspension for three calendar days, a decision has been made to suspend you for one calendar day on May 9, 2006 based on the following reasons:

> Charges One, Two and Three in paragraph 1 of the letter of proposed suspension are sustained.

2. In reaching this decision, your oral and written replies were carefully considered along with all the evidence developed.

3. You may appeal this action under the agency grievance procedure. Your grievance must be submitted through your immediate supervisor to me not later than fifteen (15) calendar days after the receipt of this letter. A further explanation of your appeal rights may be obtained by consulting Tammy Holt, Human Resources Specialist, in Human Resources Management Service at extension 3507.

DAWNA BLAKE, MD
Chief, Primary Care Service (acting)

04/17/2006 12:12 4015252591 VAMC FIRM VI PAGE 01/08

INFORMAL GRIEVANCE PROCEDURE

a. **Presenting a Grievance Under the Informal Procedure.** An employee desiring consideration of a grievance must first seek informal adjustment of the matter through supervisory channels. The employee's request for informal adjustment of a grievance should be made as soon as possible, but not later than 15 days after the date of the incident or action upon which the grievance is based, or the date upon which the employee became aware of, or should have become aware of, the incident or action upon which the grievance is based. The initial presentation, which may be oral or written, is normally made to the immediate supervisor. Subsequent presentations must be in writing. If the grievance is presented orally, the employee must make clear that a grievance is being presented, in order to distinguish grievances from mere inquiries. Supervisors who receive oral grievances will prepare a written summary of the oral presentation and will notify the grievant of the decision in writing.

b. **Grievance on Continuing Condition or Practices.** An employee may present a grievance concerning a continuing practice or condition at any time. Situations caused by actions which were taken or were identified as of a given date (e.g., admonishments, reprimands, reassignments, shift or duty assignments,) are not considered continuing conditions for these purposes despite any continuing effects they may have.

c. **Resolving a Grievance.** The supervisor to whom a grievance has been presented for informal adjustment will attempt to resolve it as expeditiously as possible, seeking the advice and assistance of others where necessary, and will give the employee a written decision on the matter within 10 days from the date of the request for informal consideration. If the relief sought is not granted, the employee should be advised of the right to present the grievance under the formal procedure.

d. **Mandatory Use of the Informal Procedure.** The employee must complete processing under the informal procedure before a grievance concerning the same matter will be accepted for processing under the formal procedure.

7. FORMAL GRIEVANCE PROCEDURE

a. **Presenting a Grievance Under the Formal Procedure.** If the employee is not satisfied with the informal answer, he/she may present the grievance in writing under the formal procedure. The formal grievance must be filed through supervisory channels within 10 days after receipt of the answer under the informal procedure. The time limit may be extended by management when good cause is shown by the employee. Normally, the formal grievance should be submitted through the employee's immediate supervisor.

b. **Contents of a Formal Grievance**

(1) The formal grievance will be in writing, will contain sufficient detail to identify and clarify the basis for the grievance, and will specify the personal relief requested by the employee. It will contain the following information:

(a) The specific action or incident on which the grievance is based; the date the action or incident occurred (if known), and the date the employee first learned of the action (if appropriate).

(b) The reasons for which the employee believes that the action was unjustified or that he/she was treated unfairly; and/or the specific policy (agency, facility, etc.), written agreement, or provision violated and how it affected the employee.

(c) The corrective action desired by the employee.

(2) A sample format for an employee's formal grievance is contained in appendix IV-A to this handbook.

(3) If the formal grievance does not contain a statement of the grievance giving essentially the information specified above, the decision official will return the grievance to the employee so that the necessary information may be furnished. If the employee fails to provide necessary information after being provided with an opportunity to do so, the decision official should reject the grievance following procedures contained in paragraph 8 of this chapter.

c. **Group Grievances.** When a group of employees has an identical formal grievance, it will be considered in the same manner as an individual complaint and the decision will be binding on all members of the group. The group will select one individual case for processing under the provisions of the formal grievance procedure.

d. **Routing Formal Grievances** The immediate supervisor or other official receiving the employee's formal grievance will refer it promptly through channels to the appropriate decision official.

2.

**Policy Memorandum** **VAMC-650**

## 3. DEFINITIONS

None.

## 4. MEMBERSHIP

None.

## 5. PROCEDURES

a. Informal Grievance

(1) An employee may present a grievance under the informal procedure either orally or in writing (see Attachment A). Normally, the employee should first discuss the grievance with the immediate supervisor. The employee is also entitled to communicate and seek advice from other officials such as supervisory or management officials above the immediate supervisor or the Personnel Officer or designee. The employee has the right to be accompanied by a representative at this and all future steps in the grievance procedure. Designation of representative must be in writing. The employee's request for informal adjustment of a grievance should be made as soon as possible, but not later than 15 calendar days after the date the incident or action the grievance is based on occurred or was first learned.

(2) All aspects of the case will be explored by the immediate supervisor or the appropriate official who has the authority to resolve the issues informally. The employee should be given an answer within ten calendar days from the date of the request for informal consideration. The answer will include the decision and the reasons on which the decision is based. The employee must complete action under the informal procedure before a grievance concerning the same matter will be accepted from him for processing under the formal procedure. Supervisors who receive oral grievances will prepare a written summary of the oral presentation and will notify the grievant of the decision in writing.

b. Formal Grievance.

(1) If the employee is not satisfied with the informal answer, the grievance may be presented in writing under the formal procedure (see Attachment A). The formal grievance must be filed through supervisory channels and the Personnel Officer to the Medical Center Director within ten calendar days after the date he/she was informed of the answer under the informal procedure. The grievance will contain sufficient detail to identify and clarify the basis of the grievance and will specify the personal relief requested by the employee. It will contain the following information:

(a) The specific action or incident on which the grievance is based, the date the action or incident occurred, if known, and the date the employee first learned of the action, if appropriate.

(b) The reasons on which the employee bases his/her belief that the action was unjustified or that he/she was treated unfairly, and/or the specific policy, written agreement, or provision violated and how it affected the employee.

(c) The personal relief desired by the employee. If the formal grievance does not contain a statement of the grievance giving the information specified above, the Personnel Officer will return the grievance to the employee so that he/she may furnish the necessary information. The Personnel Officer will establish a grievance file which will contain all documentation and information considered appropriate for reviewing in making a decision on the grievance.

(2) For Title 38 employees only, grievances over disciplinary and major adverse actions will be filed at the formal stage without first filing under the informal procedure. Major adverse actions which involve a question of professional conduct and competence are not covered by the grievance procedure.

(3) The Medical Center Director may reject the grievance if it was not filed within the time limits specified for filing under the informal and formal procedures, seeks relief not personal to the grievant, or consists wholly of a matter excluded from coverage under the grievance system. The notice of rejection must be in writing and state the reasons for the rejection.

(4) If the grievance is not rejected, the Medical Center Director will review the grievance file and attempt to resolve the grievance. If he cannot resolve it, the grievance for Title 5 employees will be referred for inquiry by an examiner within ten calendar days from the date the employee filed his/her formal grievance. The examiner will conduct an inquiry on the basis of which he/she will prepare a report of his/her findings and recommendations. This report will be submitted to the Medical Center Director who may accept the examiner's recommendations or, if he finds them unacceptable, he may transmit the formal grievance file to the Network Director for decision.

(5) When a grievance for a Title 38 employee cannot be resolved at the field station level, a grievance examiner will be appointed to review the case and issue a report to the Medical Center Director who will make the final decision.

c. Group Grievances. When a group of employees has an identical grievance, it will be considered in the same manner as an individual complaint and the decision will be binding on all

employees. If more than one employee files a formal grievance, the group will be asked to select one individual case for processing under the provisions of the formal grievance procedure.

d. Nonconformity With Procedure. Every effort will be made by both management and employees to conform to the prescribed grievance policy procedure. However, minor and unintentional technical violations, whether by management or the employee, which do not affect the general equity with which a case is presented or handled, will not in themselves invalidate either the particular grievance proceeding or any action or decision taken in connection with the grievance. However, timeliness issues will be strictly adhered to for purposes of grievance acceptability.

e. Whistleblowing appeals must be submitted in writing to the Merit Systems Protection Board and/or Office of Special Counsel. Specific information concerning filing an appeal can be obtained from Human Resources Management Service.

## 6. <u>RESPONSIBILITY</u>

a. All supervisors are responsible for assuring that every effort is made to bring about a satisfactory settlement at the informal stage of the grievance procedure. It is also the responsibility of the supervisor to respect each individual's right to voice concerns about what he/she feels is a violation.

b. Answers required at the informal stage of the grievance procedure will be made by the closest line supervisor or official with authority to settle the issue.

c. The Medical Center Director has the authority to make a decision when the formal stage of the grievance procedure is reached, provided the matter to be resolved comes under his authority.

d. The Personnel Officer is responsible for advising and assisting employees and management officials on grievance policy matters.

## 7. <u>REFERENCES</u>

VA Handbook 5021, Part IV.
5 C.F.R., Part 771.101.
Public Law 95-454, Title I, Merit System Principles, Chapter 23, Sections 2301 and 2302.

**8. <u>RESCISSIONS</u>**

Policy Memorandum 05-06, Employee Grievances, dated July 23, 1999.

**VINCENT NG**
**Medical Center Director**

**Attachments: A - Sample Grievance Format**

**DISTRIBUTION: D**

**ATTACHMENT A**

**POLICY MEMORANDUM 05- 6** **VAMC-650**

## SAMPLE GRIEVANCE FORMAT

TO: (Name, title, and mailing address)

SUBJ: Grievance

1. This is a (formal or informal) grievance under the VA grievance procedure.

(NOTE: If you are a bargaining unit employee and the matter you are grieving is covered under a negotiated grievance procedure, you must use that procedure rather than the agency grievance procedure. If you are unsure, consult your Labor Organization or Personnel Office.)

2. The matter on which this grievance is based occurred on (give date) and is described in detail as follows: (Furnish sufficient detail to clearly identify the matter being grieved. Appropriate documents related to your grievance should be attached.)

3. The personal relief, (i.e., corrective action) I seek is: (Specify clearly.)

(NOTE: "Personal relief" means a specific remedy directly benefiting you and may not include a request for disciplinary or other action affecting another employee. Failure to provide sufficient information relating to your grievance or to clearly specify the personal relief you are requesting will result in your grievance being rejected. It is preferable that you personally deliver your grievance when practicable. When mailing is used, the postmark usually determines the filing date of the grievance.)

____________________________ ____________________

Signature Date

Attachments: (It is preferable to identify any attachments.)

David E. Maglio & Associates, P. C.
*Counselors at Law*

**The Owen Building, 101 Dyer Street, Second Floor, Providence, Rhode Island, 02903**
Telephone: (401) 831-5400 • Fax: (401) 831-7979 • www.magliolaw.com

***David E. Maglio***
***dmaglio@magliolaw.com***
***Direct Dial: 401-831-7272***

May 3, 2006

**Via Facsimile and Regular Mail**

Ms. Tammy Holt
Department of Veterans Affairs
Medical Center
830 Chalkstone Avenue
Providence, RI 02908-4799

Re: Barbara Sherman, MSW, LCSW

Dear Ms. Holt:

Thank you for taking the time to speak with me yesterday. This letter will serve as formal notice that my client will be filing an informal grievance in response to the April 17, 2006 letter of decision regarding the suspension.

As promised, I am writing to memorialize my request for certain documents. Access to these documents is essential to my client's due process right to challenge the suspension and the charges that she is not performing in accordance with policies and procedures applicable to all social workers.

1. The standards referenced in Ms. Dyer's February 3, 2006 memorandum to Barbara Sherman wherein she identifies social worker clinical standards, medical center policy and JCAHO guidelines. She also refers to a chart audit tool.

2. Copies of, or access to, clinical social worker chart notes for the period January 1, 2006 to the present. I am well aware of the privacy right implications of my request. However, the names of the patients and anyone else except the social worker who authored the note can be redacted. I will sign a confidentiality agreement and will agree to destroy or return the notes at the conclusion of this matter.

3. Copies of any documents relating to complaints by any employee of the VA concerning the procedural and substantive adequacy of my client's patient chart notes.

4. Copies of any internal memoranda authored by any staff member, including but not limited to Erin Sears, relating to the proper method of substantively completing a social worker note.

Thank you for your attention to this matter, and please call me with any questions.

Very truly yours,

David E. Maglio

DEM:me

cc: Ms. Barbara Sherman

h:\clients\sherman\vet hosp.\letters\holt 5.3.06

**VA MEDICAL CENTER**
**PROVIDENCE, RHODE ISLAND**

**POLICY MEMORANDUM 05- 6**
**June 11, 2003**
**(05)**

## EMPLOYEE GRIEVANCES

### 1. PURPOSE

To provide general information and procedures relative to employee grievances and whistleblowing protection and appeal rights.

### 2. POLICY

a. The grievance procedure shall apply to matters of concern and dissatisfaction to an employee which are subject to the control of management. It is the policy of the VA to identify, prevent, and to make reasonable and proper efforts to correct the causes of employee dissatisfaction "on the job." Strong efforts will be made to resolve such disputes informally, if possible. However, the filing of formal grievances is not to be prevented or discouraged, since this is the final and necessary means of resolving disputes.

b. All parties concerned in grievance proceedings, whether employees, employee representatives or members of management, are expected to conduct themselves candidly, temperately, and in good faith, observing not only the letter of the procedure but also the underlying spirit. This procedure does not apply to such matters as position classification; incentive awards; performance standards and evaluations; merit pay determinations; proficiency reports; the content of published agency regulations and policy; non-selection for promotions from a group of properly ranked and certified candidates; and other matters as listed in regulations maintained in Human Resources Management Service. Matters grievable under the agency grievance procedure, which are also subject to a negotiated grievance procedure, must be processed under the negotiated grievance procedure.

c. All employees of this medical center are subject to the provisions of this memorandum except for employees covered by an exclusive negotiated grievable procedure and Canteen Service employees. Grievances filed by Canteen Service employees will be processed in accordance with Veterans Canteen Service operating procedures.

d. It is the policy of the VA to ensure that all leadership members promote an environment in which employees feel free to come forward with their legitimate concerns without fear of reprisal. Whistleblowing is any disclosure of information that an individual reasonably believes is evidence of a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, provided that the disclosure is not specifically prohibited by law and the information does not have to be kept secret in the interest of national defense or the conduct of foreign affairs.

## 3. DEFINITIONS

None.

## 4. MEMBERSHIP

None.

## 5. PROCEDURES

a. Informal Grievance

(1) An employee may present a grievance under the informal procedure either orally or in writing (see Attachment A). Normally, the employee should first discuss the grievance with the immediate supervisor. The employee is also entitled to communicate and seek advice from other officials such as supervisory or management officials above the immediate supervisor or the Personnel Officer or designee. The employee has the right to be accompanied by a representative at this and all future steps in the grievance procedure. Designation of representative must be in writing. The employee's request for informal adjustment of a grievance should be made as soon as possible, but not later than 15 calendar days after the date the incident or action the grievance is based on occurred or was first learned.

(2) All aspects of the case will be explored by the immediate supervisor or the appropriate official who has the authority to resolve the issues informally. The employee should be given an answer within ten calendar days from the date of the request for informal consideration. The answer will include the decision and the reasons on which the decision is based. The employee must complete action under the informal procedure before a grievance concerning the same matter will be accepted from him for processing under the formal procedure. Supervisors who receive oral grievances will prepare a written summary of the oral presentation and will notify the grievant of the decision in writing.

b. Formal Grievance.

(1) If the employee is not satisfied with the informal answer, the grievance may be presented in writing under the formal procedure (see Attachment A). The formal grievance must be filed through supervisory channels and the Personnel Officer to the Medical Center Director within ten calendar days after the date he/she was informed of the answer under the informal procedure. The grievance will contain sufficient detail to identify and clarify the basis of the grievance and will specify the personal relief requested by the employee. It will contain the following information:

(a) The specific action or incident on which the grievance is based, the date the action or incident occurred, if known, and the date the employee first learned of the action, if appropriate.

(b) The reasons on which the employee bases his/her belief that the action was unjustified or that he/she was treated unfairly, and/or the specific policy, written agreement, or provision violated and how it affected the employee.

(c) The personal relief desired by the employee. If the formal grievance does not contain a statement of the grievance giving the information specified above, the Personnel Officer will return the grievance to the employee so that he/she may furnish the necessary information. The Personnel Officer will establish a grievance file which will contain all documentation and information considered appropriate for reviewing in making a decision on the grievance.

(2) For Title 38 employees only, grievances over disciplinary and major adverse actions will be filed at the formal stage without first filing under the informal procedure. Major adverse actions which involve a question of professional conduct and competence are not covered by the grievance procedure.

(3) The Medical Center Director may reject the grievance if it was not filed within the time limits specified for filing under the informal and formal procedures, seeks relief not personal to the grievant, or consists wholly of a matter excluded from coverage under the grievance system. The notice of rejection must be in writing and state the reasons for the rejection.

(4) If the grievance is not rejected, the Medical Center Director will review the grievance file and attempt to resolve the grievance. If he cannot resolve it, the grievance for Title 5 employees will be referred for inquiry by an examiner within ten calendar days from the date the employee filed his/her formal grievance. The examiner will conduct an inquiry on the basis of which he/she will prepare a report of his/her findings and recommendations. This report will be submitted to the Medical Center Director who may accept the examiner's recommendations or, if he finds them unacceptable, he may transmit the formal grievance file to the Network Director for decision.

(5) When a grievance for a Title 38 employee cannot be resolved at the field station level, a grievance examiner will be appointed to review the case and issue a report to the Medical Center Director who will make the final decision.

c. Group Grievances. When a group of employees has an identical grievance, it will be considered in the same manner as an individual complaint and the decision will be binding on all

employees. If more than one employee files a formal grievance, the group will be asked to select one individual case for processing under the provisions of the formal grievance procedure.

d. Nonconformity With Procedure. Every effort will be made by both management and employees to conform to the prescribed grievance policy procedure. However, minor and unintentional technical violations, whether by management or the employee, which do not affect the general equity with which a case is presented or handled, will not in themselves invalidate either the particular grievance proceeding or any action or decision taken in connection with the grievance. However, timeliness issues will be strictly adhered to for purposes of grievance acceptability.

e. Whistleblowing appeals must be submitted in writing to the Merit Systems Protection Board and/or Office of Special Counsel. Specific information concerning filing an appeal can be obtained from Human Resources Management Service.

## 6. RESPONSIBILITY

a. All supervisors are responsible for assuring that every effort is made to bring about a satisfactory settlement at the informal stage of the grievance procedure. It is also the responsibility of the supervisor to respect each individual's right to voice concerns about what he/she feels is a violation.

b. Answers required at the informal stage of the grievance procedure will be made by the closest line supervisor or official with authority to settle the issue.

c. The Medical Center Director has the authority to make a decision when the formal stage of the grievance procedure is reached, provided the matter to be resolved comes under his authority.

d. The Personnel Officer is responsible for advising and assisting employees and management officials on grievance policy matters.

## 7. REFERENCES

VA Handbook 5021, Part IV.
5 C.F.R., Part 771.101.
Public Law 95-454, Title I, Merit System Principles, Chapter 23, Sections 2301 and 2302.

**8. RESCISSIONS**

Policy Memorandum 05-06, Employee Grievances, dated July 23, 1999.

**VINCENT NG**
**Medical Center Director**

**Attachments: A - Sample Grievance Format**

**DISTRIBUTION: D**

**ATTACHMENT A**

**POLICY MEMORANDUM 05- 6** **VAMC-650**

**SAMPLE GRIEVANCE FORMAT**

TO: (Name, title, and mailing address)

SUBJ: Grievance

1. This is a (formal or informal) grievance under the VA grievance procedure.

(NOTE: If you are a bargaining unit employee and the matter you are grieving is covered under a negotiated grievance procedure, you must use that procedure rather than the agency grievance procedure. If you are unsure, consult your Labor Organization or Personnel Office.)

2. The matter on which this grievance is based occurred on (give date) and is described in detail as follows: (Furnish sufficient detail to clearly identify the matter being grieved. Appropriate documents related to your grievance should be attached.)

3. The personal relief, (i.e., corrective action) I seek is: (Specify clearly.)

(NOTE: "Personal relief" means a specific remedy directly benefiting you and may not include a request for disciplinary or other action affecting another employee. Failure to provide sufficient information relating to your grievance or to clearly specify the personal relief you are requesting will result in your grievance being rejected. It is preferable that you personally deliver your grievance when practicable. When mailing is used, the postmark usually determines the filing date of the grievance.)

______________________________ ____________________

Signature Date

Attachments: (It is preferable to identify any attachments.)

**VA MEDICAL CENTER**
**PROVIDENCE, RHODE ISLAND**

**POLICY MEMORANDUM 05- 7**
**May 16, 2003**
**(05)**

## DISCIPLINE AND ADVERSE ACTION

### 1. PURPOSE

To provide general information and procedures relative to discipline and adverse actions and to designate those officials who may formally approve disciplinary actions within their respective organizational jurisdictions.

### 2. POLICY

a. All employees of this medical center are subject to the provisions of this memorandum except those employees employed under Title 38 and employees of the Canteen Service. Disciplinary and adverse actions for Title 38 employees are governed by provisions in VA Handbook, 5021, Part II. Actions for Canteen Service employees are governed by provisions found in the Veterans Canteen Service Operating Procedures Manual. The job protection provisions of adverse action procedures are not applicable to probationary and temporary employees.

b. Disciplinary action shall be taken solely for the purpose of correcting offending employees and maintaining discipline and morale among other employees. Such actions will be taken only when it is evident that other supervisory techniques have failed to correct a given problem or would be inappropriate. Supervisors should give consideration to several factors when determining what penalty is appropriate, including not only the nature and gravity of the offense but such other matters as the existence of mitigating circumstances and the frequency of the offense. Disciplinary and adverse actions shall be governed by these basic principles:

(1) The employee shall be informed why the action is being brought against him/her.

(2) The employee shall be given a fair chance to present his/her side of the case.

(3) The employee shall have the right to be accompanied, represented and advised by a representative of his/her own choosing.

### 3. DEFINITIONS

a. Admonishment. An admonishment is a disciplinary statement of censure given to an employee for a minor act of misconduct. It will be in the form of an official letter which will be placed in the employee's personnel folder. After two years, admonishments will be removed and destroyed. If the employee's supervisor so wishes, the admonishment may be withdrawn and destroyed after six months. In cases of patient abuse, the admonishment may be retained in the

personnel folder indefinitely. The official who may sign a letter of admonishment will be the official who has a good knowledge of the facts involved and is in the normal supervisory line.

b. Reprimand. A reprimand is a disciplinary statement of censure given to an employee for misconduct. It will also be in the form of an official letter which will be placed in the employee's personnel folder. After three years, reprimands will be removed and destroyed. If the employee's supervisor so wishes, the reprimand may be withdrawn and destroyed after two years. In cases of patient abuse, the reprimand may be retained in the personnel folder indefinitely. The official who may sign a letter of reprimand must be at the Service Chief/Service Line Manager level or above..

c. Disciplinary Suspensions for 14 Calendar Days or Less. A disciplinary suspension for 14 calendar days or less is an enforced temporary non-pay status and absence from duty. Such action is taken for serious misconduct. It may also be given for continued or repeated acts of misconduct. The employee will be given advance written notice of the proposed suspension. The official who may sign a letter of proposed suspension must be at the Service Chief/Service Line Manager level or above. A final decision on a proposed suspension of 14 calendar days or less will be made by the proposing official.

d. Adverse Actions. The term "adverse action" refers to a suspension for more than 14 calendar days, removal, demotion, or other action taken which results in an involuntary separation or reduction in grade or pay. Normally, a 30-calendar day advance notice will be given for proposed adverse actions. The material on which the notice of proposed adverse action is based will be made available to the employee for review. The official who may sign a notice of proposed adverse action must be at the Service Chief/Service Line Manager level or above. A final decision on such a proposed action will be made by the Medical Center Director. Adverse actions include:

(1) A removal.

(2) A suspension for more than 14 days.

(3) A reduction in grade.

(4) A reduction in pay.

(5) A furlough of 30 days or less.

4. **MEMBERSHIP**

None.

## 5. PROCEDURES

The procedures for initiating disciplinary and adverse actions for all employees falling within the scope of this memorandum are contained in VA Handbook, 5021, Part I. Any Service Chief/Service Line Manager or supervisor who contemplates a disciplinary action against an employee shall review the contents of this Handbook thoroughly. To determine what action is warranted, inquiry will be made into the incident or situation as soon as possible. Ordinarily, this inquiry will be made by the appropriate line supervisor. The employee who is alleged to have committed the offense and any other person who may have pertinent information about the case will be questioned and signed statements will be obtained. In all cases, the information obtained will be documented. The employee and the representative shall have assurance of freedom from interference, coercion or reprisal in presenting the case. In addition, all disciplinary and adverse actions will be submitted to Human Resources Management Service for review and concurrence prior to issuance to the employee. This includes any changes to the proposed action and changes to actions during a grievance proceeding. The Personnel Officer and Personnel Management Specialists are available to assist any employee who seeks information relative to the appeal procedures.

## 6. RESPONSIBILITY

a. Supervisors.

(1) Maintain a high level of morale and discipline among the employees supervised. ✓

(2) Gather and analyze the facts concerning each disciplinary or adverse action and document these facts.

(3) Initiate appropriate and timely disciplinary or adverse actions.

b. Personnel Officer and Personnel Management Specialist.

(1) Assists supervisors and management officials at all levels with disciplinary and adverse action matters; interprets regulations and statutes; recommends sound personnel practices; reviews existing policies and recommends appropriate changes.

(2) Must review and concur in disciplinary actions and adverse actions prior to issuance.

(3) Advises and assists employees relative to their rights on appeals and hearings; and provides information and interpretation of disciplinary and adverse action procedures, regulations, and statutes.

c. Employees

(1) are required to furnish testimony freely and honestly within the requirements of VA Regulations.

(2) who wish to grieve a disciplinary action, and who are covered by a union-management agreement must follow the negotiated grievance procedure. All other employees must follow the agency grievance procedure stated in Policy Memorandum 05-06, Discipline and Adverse Action, dated July 23, 1999. Employees may appeal an adverse action to the Merit Systems Protection Board or file a grievance under a negotiated procedure if they are covered by an agreement.

**7. REFERENCES**

VA Handbook 5021, Part I
5 CFR 752

**8. RESCISSIONS**

Policy Memorandum 05-7, Discipline and Adverse Actions, dated July 7, 1999.

**VINCENT NG**
**Medical Center Director**

**Attachments: None**

**DISTRIBUTION: D**

## 2. RANGE OF PENALTIES FOR STATED OFFENSES

**NOTE:** *'Days' specified in this table refer to suspension.*

| NATURE OF OFFENSE | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE |
|---|---|---|---|
| | Minimum/ Maximum | Minimum/ Maximum | Minimum/ Maximum |
| 1. Unexcused tardiness. | Admonishment Reprimand | 5 days Reprimand | 5 days Removal |
| 2. Unexcused or unauthorized absence. | Admonishment Reprimand | Reprimand 10 days | 10 days Removal |
| 3. Leaving job to which assigned or VA premises, during working hours, without proper permission | Admonishment Reprimand | 5 days Reprimand | 10 days Removal |
| 4. Loafing, willful idleness, or waste of time. | Admonishment Reprimand | Reprimand 10 days | 10 days Removal |
| 5. Careless or negligent workmanship resulting in waste or delay. | Admonishment Reprimand | Reprimand 10 days | 10 days Removal |
| 6. Violating traffic regulations or reckless driving on VA premises; or improper operation of a motor vehicle. | Admonishment 10 days | Reprimand Removal | 10 days Removal |
| 7. Failure to observe precaution for personal safety, posted rules, signs, written or oral safety instructions, or to use protective clothing or equipment. | Admonishment 10 days | Reprimand Removal | 10 days Removal |
| 8. Smoking in unauthorized places or carrying of matches in explosive areas | Admonishment Reprimand | Reprimand 10 days | 10 days Removal |
| 9. Endangering the safety of or causing injury to anyone on VA premises through carelessness or negligence. | Admonishment Removal | 10 days Removal | Removal |
| 10. Failure to report personal injury or accident. | Admonishment Reprimand | Reprimand 10 days | 5 days 15 days |
| 11. Failure to safeguard confidential matter. | Admonishment Reprimand | Reprimand 10 days | 10 days Removal |
| 12. Deliberate failure or unreasonable delay in carrying out instructions. | Admonishment Reprimand | 3 days 10 days | 10 days Removal |

## APPENDIX A. SAMPLE GRIEVANCE FORMAT

TO: (Name, title, and mailing address)

SUBJ: Grievance

1. This is a (formal or informal) grievance under the VA grievance procedure.

2. The matter on which this grievance is based occurred on (give date) and is described in detail as follows: (Furnish sufficient detail to clearly identify the matter being grieved. Appropriate documents related to your grievance should be attached.)

3. The personal relief (i.e., corrective action) I seek is: (Specify clearly.)

**NOTE:** *"Personal relief" means a specific remedy directly benefiting the grievant and may not include a request for disciplinary or other action affecting another employee. Failure on the part of the grievant to provide sufficient information relating to the grievance or to clearly specify the personal relief requested will result in rejection of the grievance. It is preferable that the grievant personally deliver the grievance when practicable. When mailing is used, the postmark usually determines the filing date of the grievance.*

Signature Date

Attachments: (All attachments should be identified)

## APPENDIX A. TITLE 5 - TABLE OF EXAMPLES OF OFFENSES AND PENALTIES

### 1. INSTRUCTIONS FOR USE OF TABLE

a. The range of penalties indicated in this table is to be used as a guide in administering discipline to help assure that like disciplinary action is taken for like offense.

b. The suspension penalties listed in the table are applicable to workdays only.

**(Caution: In title 5, U.S. Code, chapter 75, "Suspended for More than 14 days" is interpreted to express calendar days)**

c. In using this table, consideration will be given to the following:

(1) The table is designed to be sufficiently broad to include most types of offenses, but is not intended to be an exhaustive listing of all offenses. For other offenses, appropriate penalties may be prescribed by disciplinary officials for application within their jurisdiction, consistent with the range of penalties for comparable offenses listed in the table.

(2) This guide does not cover all offenses for which disciplinary penalties are expressly provided by law or Civil Service regulation.

(3) Offenses need not be identical in order to support progressively more severe disciplinary/ adverse action against an employee. For example, an employee who has received an admonishment for AWOL can receive a reprimand for sleeping on duty, and possibly be suspended or removed for a third offense unrelated to the two previous infractions.

(4) When an employee has committed a combination or series of offenses, a greater penalty than is listed for a single offense is appropriate.

(5) Where appropriate, demotion may be used in place of removal as provided in this chapter, except for the offense described in item 27 of the table.

(6) Disciplinary penalties will generally fall between the ranges indicated in the guide, but in unusual circumstances greater or lesser penalties may be imposed. In determining disciplinary action to be taken in a specific case, the following factors that will be considered as cited in Douglas v.VA, 5M.S.P.R.280 (1981). Remember that any of the Douglas factors may be either mitigating or aggravating. Each relevant factor must be addressed.

(7) The following are the twelve (12) Douglas factors:

(a) The nature and seriousness of the offense, and its relation to the employee's duties, position and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

Case 1:06-cv-00213-S-DLM Document 1-2 Filed 05/08/2006 Page 30 of 34

(b) The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

(c) The employee's past disciplinary record;

(d) The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(e) The effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon the supervisor's confidence in the employee's ability to perform assigned duties;

(f) Consistency of the penalty with those imposed upon other employees for the same or similar offenses;

(g) Consistency of the penalty with any applicable agency table of penalties;

(h) The notoriety of the offense or its impact upon the reputation of the agency;

(i) The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

(j) Potential for the employee's rehabilitation;

(k) Mitigating circumstances surrounding the offense such as unusual job tension, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

(l) The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

(7) Removal action will be taken whenever required by law or regulation or whenever warranted by the facts in the individual case. Normally, progressively more severe penalties will be administered before removal action is initiated, unless the offense is so serious that it warrants removal action. The severity of the penalty will be that which is required in order to correct the attitude or conduct of the employee or to correct the situation.

(8) Although oral or written counselings of employees are not considered disciplinary actions, such counselings may be considered when assessing the appropriate penalty for a particular offense.

(9) The "Douglas" factors are not applicable in those instances where a specific penalty (e.g., 30 day suspension for misuse of a Government vehicle) is required by statute.

## INFORMAL GRIEVANCE PROCEDURE

a. **Presenting a Grievance Under the Informal Procedure.** An employee desiring consideration of a grievance must first seek informal adjustment of the matter through supervisory channels. The employee's request for informal adjustment of a grievance should be made as soon as possible, but not later than 15 days after the date of the incident or action upon which the grievance is based, or the date upon which the employee became aware of, or should have become aware of, the incident or action upon which the grievance is based. The initial presentation, which may be oral or written, is normally made to the immediate supervisor. Subsequent presentations must be in writing. If the grievance is presented orally, the employee must make clear that a grievance is being presented, in order to distinguish grievances from mere inquiries. Supervisors who receive oral grievances will prepare a written summary of the oral presentation and will notify the grievant of the decision in writing.

b. **Grievance on Continuing Condition or Practices.** An employee may present a grievance concerning a continuing practice or condition at any time. Situations caused by actions which were taken or were identified as of a given date (e.g., admonishments, reprimands, reassignments, shift or duty assignments,) are not considered continuing conditions for these purposes despite any continuing effects they may have.

c. **Resolving a Grievance.** The supervisor to whom a grievance has been presented for informal adjustment will attempt to resolve it as expeditiously as possible, seeking the advice and assistance of others where necessary, and will give the employee a written decision on the matter within 10 days from the date of the request for informal consideration. If the relief sought is not granted, the employee should be advised of the right to present the grievance under the formal procedure.

d. **Mandatory Use of the Informal Procedure.** The employee must complete processing under the informal procedure before a grievance concerning the same matter will be accepted for processing under the formal procedure.

## 7. FORMAL GRIEVANCE PROCEDURE

a. **Presenting a Grievance Under the Formal Procedure.** If the employee is not satisfied with the informal answer, he/she may present the grievance in writing under the formal procedure. The formal grievance must be filed through supervisory channels within 10 days after receipt of the answer under the informal procedure. The time limit may be extended by management when good cause is shown by the employee. Normally, the formal grievance should be submitted through the employee's immediate supervisor.

b. **Contents of a Formal Grievance**

(1) The formal grievance will be in writing, will contain sufficient detail to identify and clarify the basis for the grievance, and will specify the personal relief requested by the employee. It will contain the following information:

(a) The specific action or incident on which the grievance is based; the date the action or incident occurred (if known), and the date the employee first learned of the action (if appropriate).

(b) The reasons for which the employee believes that the action was unjustified or that he/she was treated unfairly; and/or the specific policy (agency, facility, etc.), written agreement, or provision violated and how it affected the employee.

(c) The corrective action desired by the employee.

(2) A sample format for an employee's formal grievance is contained in appendix IV-A to this handbook.

(3) If the formal grievance does not contain a statement of the grievance giving essentially the information specified above, the decision official will return the grievance to the employee so that the necessary information may be furnished. If the employee fails to provide necessary information after being provided with an opportunity to do so, the decision official should reject the grievance following procedures contained in paragraph 8 of this chapter.

c. **Group Grievances.** When a group of employees has an identical formal grievance, it will be considered in the same manner as an individual complaint and the decision will be binding on all members of the group. The group will select one individual case for processing under the provisions of the formal grievance procedure.

d. **Routing Formal Grievances** The immediate supervisor or other official receiving the employee's formal grievance will refer it promptly through channels to the appropriate decision official.

(5) 30 days for completion of the inquiry when the examiner is appointed locally.

(6) 45 days for completion of the inquiry when the examiner is appointed by Central Office.

(7) 30 days for Central Office to issue technical reviews when requested to do so by the decision official.

(8) 15 days for issuance of the decision after the decision official receives the examiner's report of findings and recommendations or the Central Office technical review, unless the decision official takes exception to the findings and recommendations of an examiner.

b. **Delays in Processing Grievances.** Management officials should ensure that grievances are processed promptly. Management delays in any stage of the grievance procedure beyond the prescribed time limits will be explained to the employee and the employee's representative and will be documented for the record. Such delays should be rare and held to a minimum. If the employee delays in any stage of the grievance procedure, management will determine whether there was good cause and whether the grievance should continue to be processed. Such delays and explanations will be documented for the record. This includes any delay created by the denial of an employee's representative or by challenge to the denial.

## 6. INFORMAL GRIEVANCE PROCEDURE

a. **Presenting a Grievance Under the Informal Procedure.** An employee desiring consideration of a grievance must first seek informal adjustment of the matter through supervisory channels. The employee's request for informal adjustment of a grievance should be made as soon as possible, but not later than 15 days after the date of the incident or action upon which the grievance is based, or the date upon which the employee became aware of, or should have become aware of, the incident or action upon which the grievance is based. The initial presentation, which may be oral or written, is normally made to the immediate supervisor. Subsequent presentations must be in writing. If the grievance is presented orally, the employee must make clear that a grievance is being presented, in order to distinguish grievances from mere inquiries. Supervisors who receive oral grievances will prepare a written summary of the oral presentation and will notify the grievant of the decision in writing.

b. **Grievance on Continuing Condition or Practices.** An employee may present a grievance concerning a continuing practice or condition at any time. Situations caused by actions which were taken or were identified as of a given date (e.g., admonishments, reprimands, reassignments, shift or duty assignments,) are not considered continuing conditions for these purposes despite any continuing effects they may have.

c. **Resolving a Grievance.** The supervisor to whom a grievance has been presented for informal adjustment will attempt to resolve it as expeditiously as possible, seeking the advice and assistance of others where necessary, and will give the employee a written decision on the matter within 10 days from the date of the request for informal consideration. If the relief sought is not granted, the employee should be advised of the right to present the grievance under the formal procedure.

d. **Mandatory Use of the Informal Procedure.** The employee must complete processing under the informal procedure before a grievance concerning the same matter will be accepted for processing under the formal procedure.

## 7. FORMAL GRIEVANCE PROCEDURE

a. **Presenting a Grievance Under the Formal Procedure.** If the employee is not satisfied with the informal answer, he/she may present the grievance in writing under the formal procedure. The formal grievance must be filed through supervisory channels within 10 days after receipt of the answer under the informal procedure. The time limit may be extended by management when good cause is shown by the employee. Normally, the formal grievance should be submitted through the employee's immediate supervisor.

b. **Contents of a Formal Grievance**

(1) The formal grievance will be in writing, will contain sufficient detail to identify and clarify the basis for the grievance, and will specify the personal relief requested by the employee. It will contain the following information:

(a) The specific action or incident on which the grievance is based; the date the action or incident occurred (if known), and the date the employee first learned of the action (if appropriate).

(b) The reasons for which the employee believes that the action was unjustified or that he/she was treated unfairly; and/or the specific policy (agency, facility, etc.), written agreement, or provision violated and how it affected the employee.

(c) The corrective action desired by the employee.

(2) A sample format for an employee's formal grievance is contained in appendix IV-A to this handbook.

(3) If the formal grievance does not contain a statement of the grievance giving essentially the information specified above, the decision official will return the grievance to the employee so that the necessary information may be furnished. If the employee fails to provide necessary information after being provided with an opportunity to do so, the decision official should reject the grievance following procedures contained in paragraph 8 of this chapter.

c. **Group Grievances.** When a group of employees has an identical formal grievance, it will be considered in the same manner as an individual complaint and the decision will be binding on all members of the group. The group will select one individual case for processing under the provisions of the formal grievance procedure.

d. **Routing Formal Grievances** The immediate supervisor or other official receiving the employee's formal grievance will refer it promptly through channels to the appropriate decision official.